Consuelo Serna **LORUSSO**, Petitioner,

v.

**MEMBERS MUTUAL INSURANCE COMPANY et al.**, Respondents.

No. B–8503.

Supreme Court of Texas.

July 30, 1980.

Ben A. Endlich and Bruce J. Ponder, El Paso, for petitioner.

Scott, Hulse, Marshall & Feuille, Stephen B. Tatem, Jr., Phillip Bowen, El Paso, for respondents.

BARROW, Justice.

Consuelo Serna Lorusso sued respondents, Armando Valdez, Jr. and Members Mutual Insurance Company, to recover damages for personal injuries sustained in a collision between her car and a car operated by Valdez. The Lorusso car was insured by Members Mutual for liability insurance including uninsured motorist coverage and it was alleged by Lorusso that Valdez was uninsured. Members Mutual filed a third-party action against Valdez for indemnity. The trial court, over objection by Lorusso, allowed Valdez and Members Mutual six peremptory challenges each. A take-nothing judgment was rendered on the jury verdict which found that the percentage of negligence proximately causing the occurrence was Lorusso 80 percent and Valdez 20 percent. *See* Article 2212a, Tex.Rev.Civ.Stat. Ann.

The court of civil appeals held that the trial court erred in granting the defendants twelve peremptory challenges because no antagonism existed between these two defendants in a matter that would concern the jury. However, that court, with one justice dissenting, held that the record did not show that this error caused or probably did cause the rendition of an improper judgment as required for a reversal under Rule 434.[1] The trial court judgment was accordingly affirmed. 580 S.W.2d 72.

The questions before us are: (1) whether the harmless error rule applies to this asserted error and, if so; (2) whether the error complained of amounted to such a denial of the rights of Lorusso as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case so as to authorize a reversal by the court of civil appeals under Rule 434 and by this Court under Rule 503. In answering these questions we assume, without deciding, that the court of civil appeals

correctly held that the trial court erred in granting six peremptory strikes each to Valdez and Members Mutual.[2]

We hold that the harmless error rule applies to the error in granting defendants six peremptory challenges each. We agree with the holding of the court of civil appeals that Lorusso did not meet the burden required for a reversal under Rule 434 and Rule 503. We therefore affirm the judgment of that court.

■ Rule 503, which was adopted by this Court in 1941, and remains as a viable part of our Rules of Civil Procedure, provides in part:

"[T]hat no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that an error of law has been committed by the trial court in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the petitioner as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, . . . ."[3]

The obvious purpose of this rule was to abolish the then existing rule of presumed prejudice whereby the prevailing party had the burden of proving that the complaining party was not prejudiced by the error. *See* Calvert and Perin, *Is the Castle Crumbling? Harmless Error Revisited*, 20 S.Tex.L.J. 1 (1979); Calvert, *The Development of the Doctrine of Harmless Error in Texas*, 31 Tex.L.Rev. 1 (1952).

The language of the rule is clear and direct. The rule recognizes that a litigant is not entitled to a perfect trial for, indeed, few trials are perfect. In recognition of this fact, the harmless error rule establishes a sound and common sense policy of not

---

1. All references to rules are to Texas Rules of Civil Procedure.

2. Members Mutual was aligned with Valdez insofar as both desired a jury finding that Lorusso's own negligence was the cause of the collision. However, Members Mutual was aligned with Lorusso insofar as both sought to

show that Valdez's negligence was a proximate cause of the collision.

3. Rule 434, which applies to a review by the court of civil appeals, contains the same language.

reversing a judgment unless the error or errors can be said to have contributed in a substantial way to bring about the adverse judgment. *See King v. Skelly*, 452 S.W.2d 691, 696 (Tex.1970). The rule by its very terms applies to all errors in that it draws no distinction as to the type of errors involved in its requirement for reversal. Furthermore, we have specifically held that Rule 503 applies to errors in the granting of the number of peremptory challenges.

In *Retail Credit Company v. Hyman*, 316 S.W.2d 769 (Tex.Civ.App.—Houston 1958, writ ref'd), it was held that if the court erred in denying each of the two complaining defendants six peremptory challenges, such error would be held harmless unless the appellants proved to the reviewing court that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment as required by Rule 434. It was further held that to determine whether any error caused the rendition of an improper judgment, the reviewing court must look to the whole record of the trial.

This application of the harmless error rule was expressly approved by this Court in *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965), where it was held that the trial court erroneously required the two defendants to share six strikes. After pointing out that Rules 434 and 503 provide that no judgment shall be reversed and a new trial ordered for an error of law committed in the court of the trial unless the appellate court is of the opinion that the error was reasonably calculated to and probably did cause the rendition of an improper judgment, we said:

> "The harmless error rule undoubtedly applies where a party is denied the number of peremptory challenges to which he is entitled. As a practical matter, however, the appellant will usually be unable to show that an improper judgment probably resulted from an error of this nature. . . ."

We then held that the burden of the complaining party to establish reversible error under Rule 503 would be met by showing that the trial was "materially unfair." This was done under the record in that case by demonstrating that the evidence in the case was sharply conflicting. *Tamburello* involved a pure swearing match between the two drivers without any corroborating physical facts for either witness. We held that under these circumstances, the granting of only three jury strikes to a party resulted in a materially unfair trial.

In *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.1974), we held that where the trial court had erroneously granted the defendant-father six peremptory challenges and the intervenors-paternal grandparents six peremptory challenges while the plaintiff-mother had only six strikes in her child custody case, this error was calculated to cause the trial to be materially unfair. The judgment was accordingly reversed and remanded under the *Tamburello* test. The Court did not expressly discuss the harmless error test which was approved in *Tamburello*. Nevertheless, it is apparent that, as pointed out by Perkins, the record there clearly satisfied the test required under Rule 503. The 1,374 page statement of facts was before the Court and demonstrated that this was a bitterly contested child custody case in which twenty-six witnesses testified, and their testimony sharply conflicted, regarding the best interest of the little girl in question. In this situation, it was materially unfair to give one party six strikes and the two aligned parties twelve strikes.

The *Tamburello* test was recently applied in *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914 (Tex.1979). We held that the trial court erred under Article 2151a, Tex. Rev.Civ.Stat.Ann., in giving each of the four defendants six peremptory challenges while the plaintiff was given only six challenges. We expressly recognized the *Tamburello* requirement that the complaining party show that the trial which resulted in the judgment against him was "materially unfair." In considering how this is met, we said:

> "Normally, the question whether the trial was materially unfair in either the

determination of antagonism or the equalization of strikes requires that the entire record, including the statement of facts, be examined by the appellate court. *See Retail Credit Co. v. Hyman, supra.* The presence of error in either instance is to be viewed from the perspective of the trial judge as of the time he makes his determination. Whether any such error resulted in a materially unfair trial, however, must be decided from an examination of the entire trial record. For example, in a case in which the complaining party failed to prove his cause of action or defense, an error in allocating or equalizing strikes could not be said to have resulted in a materially unfair trial. On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more . . ."

Although there was no statement of facts in the record, we said that it was abundantly clear from other parts of the record that the trial was hotly contested. We then held that in these circumstances, a disparity of strikes between sides of as much as four-to-one resulted in a materially unfair trial as a matter of law.

In *Dunn*, we cited with approval *Roy L. Martin & Associates, Limited v. Renfro*, 483 S.W.2d 845 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.), where the court applied the harmless error test to determine that the trial court's error in granting excessive peremptory challenges required a remand.

We conclude that the harmless error rule applies in determining whether the error of the trial court in giving each of the two defendants six peremptory challenges was such as to require a reversal of the take-nothing judgment. We turn now to the question of whether the record before us meets this test.

We recognize the impossibility of prescribing a specific test for determining whether any error, be it the improper admission or exclusion of evidence, improper argument, or the giving or depriving of a party of the proper number of peremptory challenges, "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Such a determination necessarily is a judgment call entrusted to the sound discretion and good senses of the reviewing court. It is clear, however, that such a judgment call must be determined from an evaluation of the whole case. *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835 (Tex.1979).

In any event, there is nothing in the clear language of Rule 503 which would justify a return to the expressly discarded doctrine of "presumed harm." A test which would require the prevailing party to demonstrate that harm did not result from an error is nothing more than application of the presumed harm doctrine. To apply such a test would require repeal, or at least amendment, of Rule 503. This has not been done directly and should not be done by implication.

A statement of facts in the traditional sense was not brought forward by Lorusso, the complaining party. All that was filed was a partial statement of facts which shows that Lorusso objected to the trial court's action in permitting each of the two defendants six peremptory challenges. It contains none of the testimony given at the trial. Thus, all we know about the cause of the collision is shown by the pleadings. According to the allegations in Lorusso's petition, the collision occurred when she attempted a left turn in front of the on-coming Valdez vehicle. The jury verdict is in the transcript and from it we learn the following: All twelve jurors found that in attempting to turn left when the Valdez vehicle was an immediate hazard, Lorusso had failed to yield the right-of-way and that she had failed to keep a proper lookout on the occasion in question. Eleven jurors, with one abstaining, found that she failed to make proper application of her brakes. Each of these negligent acts was found to be a proximate cause. All jurors refused to find that Valdez had kept an improper lookout, but eleven found that he was driving at a negligent rate of speed. The jurors unan-

imously found that Lorusso had not sustained any damages as a result of the alleged injuries. There is nothing in the pleadings or verdict of the jury to indicate that the case was "sharply contested" on either liability or damages.

The record here does not show how the parties exercised their challenges, i. e., whether all were exercised, or whether there were double strikes. A photostat copy of what purports to be a "List of Jurors" with "Plaintiff's Strikes" indicated thereon is in the transcript. This copy shows a list of 30 names, six of which are drawn through, and eleven are numbered. A check of these names with the jurors who signed the verdict indicates that these eleven served on the jury, although where the twelfth juror came from is not shown. It is significant that the six challenges purportedly made by Lorusso were all made in the first twenty-four names. Also, it is seen that ten jurors were selected from the first twenty-four names. See Rule 292. It cannot properly be said that this jury list demonstrates that Lorusso was harmed by the trial court's error in permitting each of the two defendants six peremptory challenges.

We conclude from the limited record brought forward that Lorusso failed to establish that the error in the number of peremptory challenges granted defendant resulted in a "materially unfair" trial so as to require a reversal under Rule 503.

We affirm the judgment of the court of civil appeals.

Dissenting opinion by STEAKLEY, J., in which DENTON, CAMPBELL and SPEARS, JJ., join.

STEAKLEY, Justice, dissenting.

I respectfully dissent.

Consuelo Serna Lorusso sued Armando Valdez, Jr., for personal injuries resulting from an automobile accident. She joined her insurance carrier, Members Mutual, alleging that Valdez was uninsured and thus, as to this, invoked her policy coverage. Members Mutual filed a third party action against Valdez for indemnity. Before se-lection of the jury, Lorusso, who was allowed six peremptory jury challenges, objected to the allowance by the trial court of six peremptory challenges each to Valdez and Members Mutual, the two parties aligned on the opposing side. The following extract from the trial of the cause was brought forward:

Be it remembered that on this the 13th day of February, 1978, concluding on the 15th day of February, 1978, the above entitled and numbered cause came on for trial before said Honorable Court, Charles R. Schulte, Judge Presiding, with a jury, and the following proceedings, as requested by Counsel, were extracted from the trial of said cause as follows:

THE COURT: Prior to the selection of the Jury in this cause, the Counsel for the Plaintiff objected to the Court's extending to the Defendants, and each of them, six peremptory challenges. Position of Plaintiff being that the Defendants were entitled to six challenges, peremptory challenges between the two of them. The Court at that time indicated that on paper the adversity appeared of record. That there was a suit for damages over and against the individual Defendant Armando Valdez, Jr. on behalf of Members Mutual Insurance Company, a Third-Party Complaint, by virtue of which the Court felt compelled to extend to each of the Defendants six challenges to which Mr. Ben Endlich on behalf of the Plaintiff excepted. Do you wish to add to that, sir?

MR. ENDLICH: Yes, Your Honor. If it please the Court, along with the objection of Counsel would like to point out that the attorney for Armando Valdez, Jr., Mr. Bowen, as reflected in the deposition taken of Kenneth Compton on January the 19th, 1978, waived his presence; and appearing at the deposition, only, was Ben Endlich and Mr. Tatem, reflecting that Mr. Bowen, in fact, relied upon the actions and the cross-examination by Mr. Tatem of that witness. And that, likewise, the deposition taken of Dr. Mario Palafox, taken on the 6th day of Feb-

ruary, 1978, it reflects therein at page 3 of the deposition that Mr. Bowen, Attorney for Mr. Valdez, waived appearance at the taking of this deposition indicating that, in fact, the interests of the parties are mutual.

Also, the fact that Mr. Bowen and Mr. Tatem took their strikes together in a common room, each advising the other, I'm sure, of what strikes the other was taking.

This Counsel submits that on the face of the pleadings, the interests may be conflicting; however, that in actuality during the course of the trial the interests of the parties will be mutual. And that that being the case, the opportunity to strike together is an overwhelming opportunity that deprives this Counsel of a fair jury selection in allowing the Defendants mutually six extra strikes.

THE COURT: Exceptions overruled.

There is included in the transcript a list of thirty jurors. The names of six jurors on the list are marked through; whether they were dismissed on the basis of a challenge for cause, or were subject to the exercise of a peremptory challenge by one or more of the parties, cannot be determined. The list also indicates eleven jurors who were selected. The verdict, however, is signed by twelve jurors; the name of one of the twelve does not appear on the list of jurors.

Upon trial the jury found that both Lorusso and Valdez were negligent in certain respects and apportioned the percentage of negligence that proximately caused the occurrence 80% to Lorusso and 20% to Valdez. The jury also answered "None" to the issue inquiring if Lorusso suffered any injuries or damages. Based on the jury verdict, the trial court rendered a take-nothing judgment against Lorusso.

I agree with the writing and determination by the Court of Civil Appeals in both the majority and dissenting opinions that no antagonism existed between Valdez and Members Mutual with respect to a question the jury would decide, and that the allowance of six strikes each to them was error.

The question upon which the Court of Civil Appeals divided, and upon which we granted writ of error, is whether under the appellate record, and as required by Rule 503, Tex.R.Civ.P., "the error . . . amounted to such a denial of the rights of [Lorusso] as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." The Court of Civil Appeals ruled that it did not. 580 S.W.2d 72.

A peremptory jury challenge is defined by Rule 232 [1] as one "without assigning any reason therefor." Each party to a district court civil suit "shall be entitled to six peremptory challenges." Rule 233. Article 2151a, Tex.Rev.Civ.Stat.Ann. was enacted by the Legislature in 1971. It provides:

After proper alignment of parties, it shall be the duty of the court to equalize the number of peremptory challenges provided under Rule 233, Texas Rules of Civil Procedure, Annotated, in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party.

We have written in the two contexts in which the problem of allocating peremptory strikes arises, i. e., where there is antagonism between litigants on the same side of the docket, see *Patterson Dental Company v. Dunn*, 592 S.W.2d 914 (Tex.1980) and *Tamburello v. Welch*, 392 S.W.2d 114 (Tex. 1965); and where, as here, there is no antagonism, see *Perkins v. Freeman*, 518 S.W.2d 532 (Tex.1974). In *Perkins* we wrote:

. . . We are of the opinion that the awarding of six peremptory challenges to both the defendant and the intervenors gave them an unequal advantage; and that this unequal advantage was so materially unfair that the judgment cannot be upheld.

The award to the defendant and intervenors of double the amount of peremptory challenges to which they were not entitled is calculated to cause the trial to

---

1. The references are to Texas Rules of Civil Procedure.

be materially unfair. *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965); *Tuloma Gas Products Company v. Lehmberg*, 430 S.W.2d 281 (Tex.Civ.App.1968, writ ref. n. r. e.).

*Id.* at 534.

It is to be noted that the record in *Perkins v. Freeman* included a statement of facts upon a review of which the Court of Civil Appeals did not find that the error in the award of peremptory challenges probably caused the rendition of an improper judgment. Cited was Rule 434. However, no reference was made to the statement of facts in the opinion of this Court reversing the judgments of the trial court and of the Court of Civil Appeals, and remanding the cause for a new trial.

In stating the threshold question in *Patterson Dental Company v. Dunn*, i. e., whether there was antagonism on the same side, we commented, "Where no antagonism exists, each side must receive the same number of strikes." Cited were *Perkins v. Freeman*, and intermediate court decisions to the same effect. Referring to *Tamburello*, we wrote:

> . . . We relaxed the requirement of the traditional "harmless error" rule by establishing the burden on the complaining party to show that "the trial which resulted against him was *materially unfair*" and held that the denial of strikes to each defendant, without any further showing, resulted in a trial that was so materially unfair that the judgment must be reversed.

> In *Perkins v. Freeman*, supra, a child custody case, the plaintiff-mother was given six strikes, the defendant-father was given six, and the intervenors, paternal grandparents, were given six. Because the pleadings demonstrated that no antagonism existed between the father and his parents, we reversed and remanded, holding that their twelve strikes gave them "an unequal advantage, [that] was so materially unfair that the judgment cannot be upheld." Id. at 534. No further showing of harm was made or discussed.

Normally, the question whether the trial was materially unfair in either the determination of antagonism or the equalizing of strikes requires that the entire record, including the statement of facts, be examined by the appellate court. 592 S.W.2d 914 at 921.

In *Tamburello*, we commented that the harmless error rule undoubtedly applies where a party is denied the number of peremptory challenges to which he is entitled; we recognized, however, that an appellant will usually be unable to show that an improper judgment probably resulted from an error of this nature. We also noted that the parties not given the challenges to which they were entitled made no attempt to give their reasons for wishing to challenge three of the jurors who served on the case, and did not offer any proof indicating that the individuals named by them were biased, prejudiced, or failed to render an impartial verdict. Finally, we said that the proper approach to the question of harm is whether the denial of jury challenges to which the party is entitled resulted in a materially unfair trial; and we held that it did. *Perkins v. Freeman* then followed by saying in the non-antagonism context that an award of excess peremptory challenges results in an unequal advantage so materially unfair as to require a reversal of the judgment.

So we reach the present case. From the record, including unchallenged statements in the briefs of the parties, see Rules 419 and 496, we can determine the following:

(1) Lorusso objected to the award of six strikes each to Valdez and Members Mutual between whom there was no antagonism on an issue to be decided by the jury. Lorusso did not move that she be given six additional strikes to equalize the twelve given to Valdez and Members Mutual.

(2) Valdez and Members Mutual collaborated in the exercise of their twelve strikes. Lorusso did not move that they not be allowed to strike together.

(3) The trial was vigorously contested with the jury findings substantially

more unfavorable to Lorusso than to Valdez.

Among other things, the jury found that Lorusso failed to keep a lookout; that she failed to make a proper application of the brakes of her vehicle; that she began to turn left when the vehicle driven by Valdez was within the intersection or approaching so closely as to constitute an immediate hazard. As previously noted, the jury assessed 80% of the negligence to Lorusso and 20% to Valdez.

Contrariwise, we cannot determine how the parties exercised their challenges, i. e., whether all were exercised, or whether there were double strikes. Nor can we determine if there were any challenges for cause or, if so, by whom and whether sustained or denied. The inference can perhaps be fairly drawn that Valdez and Members Mutual used their strikes from these statements by the parties. Lorusso in her application for writ of error argued:

> How can a party whose opponents, utilize twice as many strikes as she does and exercise those strikes in a room together be assured of a fair and impartial jury? The answer is that she cannot. How can a party in a case in which the jury is almost certainly disposed to her opponents receive a trial which is not materially unfair? She cannot. Petitioner cannot agree with the Court of Civil Appeals that she must preclude, by means of a full statement of facts, that the great weight of the evidence might have compelled a finding that she was contributorily negligent or that she was not hurt.

There was no challenge to the assertion that Valdez and Members Mutual utilized "twice as many strikes" beyond the following in the answer of Valdez and Members Mutual to the application for writ:

> . . . The fact that Respondents chose to exercise their strikes together *after* they had been awarded their peremptory challenges by the Court, when no motion had been made that Respondents not be allowed to strike together, cannot be used as a basis for showing that six (6) separate strikes should not have been awarded.

Since we do not have a complete state of facts, we do not know the factual circumstances surrounding the occurrence in question; and we cannot evaluate the evidence favorable or unfavorable to the respective parties. Nor can we determine if Lorusso suffered injuries or damages contrary to the jury finding that she did not. It is the burden of an appealing party claiming reversible error in the award of peremptory challenges to bring forward a record sufficiently complete to demonstrate that the error probably resulted in a materially unfair trial. This conclusion should not be presumed from the fact of the error, standing alone, and necessarily must be determined in the light of the record available to the appellate court. This does not mean that a complete statement of facts is prerequisite in all instances. In *Patterson v. Dunn*, supra, we ruled that a disparity of strikes of as much as 4-to-1 results in a materially unfair trial as a matter of law. We did so in the absence of a statement of facts demonstrating that the non-complaining party would otherwise have been entitled to a judgment or that the case was not seriously disputed on its facts.

The 2-to-1 disparity here where there was no antagonism presents the same situation of harm to Lorusso that was recognized in Dunn, the plaintiff, in *Patterson v. Dunn*. Consistent with *Patterson v. Dunn* and *Perkins v. Freeman*, I would hold under the record here that the allowance by the trial court of six peremptory challenges each to Valdez and Members Mutual who were non-antagonistic parties on the defensive side of the docket, while allowing Lorusso, the plaintiff, only six peremptory challenges, resulted in a materially unfair trial requiring a reversal of the judgments below, and a remand of the cause for another trial.

DENTON, CAMPBELL and SPEARS, JJ., join in this dissent.